[Cite as *In re N.A.*, 2026-Ohio-3045.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | |
|---|---|
| IN RE: N.A., L.C.A., M.A. | : |
| | :     C.A. Nos. 30743; 30754 |
| | : |
| | :     Trial Court Case Nos. G-2023-001879-1H; G-2023-001878-1E; G-2023-001877-1E; C-2023-001877-1F |
| | : |
| | : |
| | : |
| | :     (Appeal from Common Pleas Court-Juvenile Division) |
| | : |
| | : |
| | :     **FINAL JUDGMENT ENTRY & OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on August 7, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately send a copy of the court's ruling to each party and note that action on the docket. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
MICHAEL L. TUCKER, JUDGE

EPLEY, J., and HUFFMAN, J., concur.

**OPINION**

MELISSA A. BERRY, Attorney for Appellant
KIRSTEN KNIGHT, Attorney for Appellee Father
MICHAEL P. ALLEN, Attorney for Appellee Montgomery County Children Services

TUCKER, J.

{¶ 1} B.D. ("Mother") appeals from the judgment of the Montgomery County Court of Common Pleas, Juvenile Division, awarding temporary custody of her minor child L.C.A. to Montgomery County Children's Services ("MCCS") and awarding temporary custody of her minor child M.A. to A.A. ("Father"). For the reasons set forth below, we affirm.

## I. Factual and Procedural History

{¶ 2} MCCS became involved with Mother and her children in 2023 following allegations of physical abuse concerning a child who, since the initiation of this case, has reached the age of emancipation.[1] Additionally, MCCS later received information that L.C.A. was not enrolled in school and was not being homeschooled. L.C.A. also alleged that Mother had physically abused him. Finally, the agency received information that the children were not receiving appropriate medical care. M.A. suffers from autism, as well as Sanfilippo Syndrome, which requires her to receive full-time care and specialized medical treatment.[2] Following an investigation, MCCS filed a dependency complaint. The children were adjudicated as dependent in July 2023. During the pendency of this matter, Mother's home

---

1. The record shows that Mother was arrested for domestic violence and that she eventually entered a guilty plea to domestic violence as well as a guilty plea to disorderly conduct.

2. According to the record, Sanfilippo Syndrome is often referred to as "childhood dementia."

had a broken sewer pipe that went unrepaired for some period of time, which released sewer odors into the home.

{¶ 3} Case plans were implemented for both Mother and Father. Mother's case plan included requirements that she maintain stable housing and income, ensure the cleanup of biohazards in the home, sign releases for information, complete a parenting class and a batterers intervention class, meet with MCCS personnel on a monthly basis, obtain a mental health assessment, and visit with the children on a regular basis.

{¶ 4} Although the sewer pipe was ultimately repaired, Mother's home went into foreclosure, and she refused to inform MCCS about her future housing plans. Mother also stated that she was employed but failed to provide income verification to MCCS. Mother completed a mental health assessment and was diagnosed with post-traumatic stress disorder ("PTSD"), dysthymia, and alcohol-use disorder. However, she failed to follow up with recommended treatment. Mother had minimal engagement with MCCS personnel, claiming that being at the agency's facility triggered her PTSD. She failed to complete a parenting or batterers class. Mother failed to visit with the children after their removal from the home.

{¶ 5} Father made significant progress on his case plan, which included verification of income, maintaining appropriate housing, signing information releases, and attending regular meetings with MCCS.

{¶ 6} MCCS was granted temporary custody of the children. Initially the children were placed in group homes. L.C.A. was later moved to a foster home. M.A. was moved to Father's home in 2025, and temporary custody was granted to Father.

{¶ 7} Mother appeals.

3

## II. Temporary Custody

**{¶ 8}** Mother asserts the following two assignments of error:

THE JUVENILE COURT ERRED IN ADOPTING THE MAGISTRATE'S DECISIONS GRANTING TEMPORARY CUSTODY OF L.C.A. TO THE AGENCY AND M.A. TO FATHER, WHICH WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

THE JUVENILE TRIAL COURT ERRED IN ADOPTING THE MAGISTRATE'S DECISIONS GRANTING TEMPORARY CUSTODY OF L.C.A. TO THE AGENCY AND M.A. TO FATHER BECAUSE THE DECISIONS WERE NOT IN THE BEST INTERESTS OF THE CHILDREN.

**{¶ 9}** Mother argues that the temporary custody decisions were not in the best interest of the children, were not supported by sufficient evidence, and were otherwise against the manifest weight of the evidence. Her arguments center on her claim that the stated reasons for the initial removal were not substantiated and that the evidence indicates she complied with her case plan. She further claims the trial court erred by denying the admission of certain evidence outlined below.

**{¶ 10}** Under R.C. 2151.353(A), a juvenile court may make any one of several dispositional orders if a child is adjudicated abused, neglected, or dependent. These orders include, among other things, committing the child to the temporary custody of a public children services agency or awarding legal custody to either parent. R.C. 2151.353(A)(2)(a) and (c). When considering which of these options to utilize, the court's "primary consideration" is the best interest of the children. *In re S.W.*, 2024-Ohio-681, ¶ 25 (2d Dist.)

4

**{¶ 11}** To determine the best interest of the children, courts are guided by the factors set forth in R.C. 3109.04(F)(1). *Id.* at 26, citing *In re M.S.*, 2022-Ohio-3348, ¶ 38 (2d Dist.). These factors include, but are not limited to, the wishes of the parents; the child's interactions and interrelationships with parents, siblings, and other persons who may significantly affect the child's best interest; the child's adjustment to home, school, and community; the mental and physical health of all persons involved in the situation; and the presence or absence of a reason to believe that a parent has abused a child. R.C. 3109.04(F)(1)(a), (c), (d), (e), and (h).

**{¶ 12}** We have summarized the standards for review of a temporary custody decision as follows:

"A temporary-custody decision 'must be supported by a preponderance of the evidence.'" *In re A.A.R.*, 2d Dist. Greene No. 2021-CA-23, 2022-Ohio-93, 2022 WL 130833, ¶ 17, quoting *In re S.M.*, 2d Dist. Montgomery No. 24539, 2011-Ohio-6710, 2011 WL 6884242, ¶ 4. "Preponderance of the evidence simply means 'evidence which is of a greater weight or more convincing than the evidence which is offered in opposition to it.'" *In re Starks*, 2d Dist. Darke No. 1646, 2005-Ohio-1912, 2005 WL 939851, ¶ 15, quoting *Black's Law Dictionary* 1182 (6th Ed. 1998).

Nonetheless, "[a] trial court has substantial discretion in weighing the considerations involved in making the determination regarding a child's best interest, and the court's determination will not be reversed absent an abuse of that discretion." *In re S.M.* at ¶ 4, citing *In re K.H.*, 2d Dist. Clark No. 2009-CA-80, 2010-Ohio-1609, 2010 WL 1410760, ¶ 66. "'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable."

(Citation omitted.) *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Most often, this means a court's decision was based on unsound reasoning rather than being arbitrary or unconscionable. *Id.*

We have also stressed that "our review is limited to determining whether the record contains competent, credible evidence supporting the trial court's decision." *In re A.A.R.* at ¶ 17, citing *In re J.T.*, 2d Dist. Montgomery No. 26839, 2016-Ohio-602, 2016 WL 685305, ¶ 33. On review, we are also guided by a presumption that the trial court's factual findings were correct, because "[t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). *Accord In re M.S.*, 2d Dist. Montgomery No. 29441, 2022-Ohio-3348, 2022 WL 4392459, ¶ 36.

. . .

. . . Accordingly, in situations like the present, where only temporary custody is at issue, we [apply the abuse of discretion standard].

*S.W.* at ¶ 27-29, 32.

{¶ 13} Mother desires to retain full custody of M.A. However, she specifically testified that she does not want to reunify with L.C.A. Father wishes to retain custody of M.A. Due to her serious medical condition, M.A. is unable to express her wishes regarding custody. L.C.A. has stated that he does not wish to return to Mother's care and that he does not wish

6

to have contact with either parent.[3] The guardian ad litem recommended that the agency retain temporary custody of the children.

{¶ 14} The record establishes that the siblings currently have appropriate contact with each other through MCCS. L.C.A. is bonded with his foster family, is doing well in school, and has exhibited behavioral improvement. M.A. needs constant care due to her medical condition, and the record supports the conclusion that Father is best able to meet her needs.

{¶ 15} Mother has been diagnosed with PTSD, dysthymia, and alcohol-use disorder but has failed to engage in treatment. Father suffers from depression and receives mental health services through the Veteran's Administration.

{¶ 16} Finally, Mother was arrested for and pleaded guilty to domestic violence regarding a child who is not part of this appeal. Further, L.C.A. informed MCCS that she was abusive to him.

{¶ 17} In sum, the record contains competent, credible evidence that, following an adjudication of dependency, Mother failed to comply with her case plan and continuously failed to cooperate with MCCS. Further, the record supports the trial court's conclusion that granting temporary custody of L.C.A. to MCCS was in his best interest and that granting temporary custody of M.A. to Father was in her best interest. Therefore, we cannot conclude that the trial court's temporary custody decision constituted an abuse of discretion.

{¶ 18} We note that Mother contends the trial court erred by excluding evidence regarding her claim that L.C.A. is an unruly and delinquent child whose past behaviors incentivized him to lie about Mother's abuse and his living conditions. She further claims that the trial court excluded evidence regarding her claim that Father committed domestic

---

3. The record demonstrates that L.C.A. will turn 18 in October 2026 and thus will become emancipated.

7

violence against her in the past. Finally, she contends the trial court refused to consider evidence that she had completed a domestic violence course prior to the removal of the children.

**{¶ 19}** Even were we to assume the trial court erred in the exclusion of the above-cited evidence, we find no prejudice because, as discussed, the record fully supports the trial court's temporary custody decision.

**{¶ 20}** Accordingly, both of Mother's assignments of error are overruled.

### III. Conclusion

**{¶ 21}** Both of Mother's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, J., and HUFFMAN, J., concur.